# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

KYM NEWTON, CHEADRIANNA, JOHNSON, MAQUITA LAMB, individually, and on behalf of all others similarly situated,

                          Plaintiffs,

v.

BANK OF AMERICA, NATIONAL ASSOCIATION, a North Carolina Corporation, and DOES 1-100, inclusive,

                          Defendant.

Case No. 2:14-cv-03714-CBM-MRWx

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT AND MOTION FOR CLASS CERTIFICATION [JS-6]**

Before the Court are (1) Defendant's Motion for Summary Judgment; (2) Plaintiffs' Motion for Partial Summary Judgment; and (3) Plaintiffs' Motion for Class Certification.  (Dkt. Nos. 55, 48, 57.)

Upon consideration of papers and arguments presented, the Court hereby **GRANTS** Defendant's Motion, and **DENIES** Plaintiffs' Motion for Partial Summary Judgment and Motion for Class Certification as moot.

# I.   JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

# II.   FACTUAL AND PROCEDURAL HISTORY

The present case is brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq*. ("FCRA").  Plaintiffs Kymberleigh Newton, Cheandrianna Johnson, and Marquita Lamb ("Plaintiffs"), on behalf of themselves and all similarly situated individuals, allege that Defendant Bank of America, National Association ("BANA" or "Defendant") procures consumer reports on prospective and current employees using disclosures that do not comply with the FCRA.

## A.   BANA's Background Screening

As a condition of employment with BANA, all applicants must consent to and pass both the Applicant Screening Investigation ("ASI Background Check"), and the criminal background screening ("Criminal Background Check") (collectively the "Background Screening").[1]  Prospective employees consent to BANA's Background Screening as part of its online application process.

### *1.   ASI Background Check*

BANA administers its ASI Background Check through its vendor, Early Warning Services LLC ("EWS").  (Second Prebil Decl., ¶ 7.)  The ASI process begins when BANA sends an applicant an email with a link directing the applicant to a form titled, "Request to Initiate Authorization for Investigation" (the "ASI Authorization").  (Gallenberg Decl., Ex. 1; Second Prebil Decl., ¶ 10, Ex. 4.)

The applicant must click a box that provides, "*YES, I consent to this investigation and authorize the Bank to procure a report on my background according to the terms below*."  (*Id*.)  Once the applicant clicks the box, the form shows a date/time stamp, and the applicant enters information regarding prior

---

[1] (*See* Second Declaration of Cindy Prebil ("Second Prebil Decl.") Dkt. No. 64, ¶¶ 3-9; Declaration of Cindy Prebil ("Prebil Decl.") Dkt. No. 56-2, ¶¶ 3-8.; Declaration of Rosa Vigil-Gallenberg ("Gallenberg Decl.") Dkt No. 57-2, Ex. 1.)

addresses, education and employment history.  (*Id*. at 7.)  EWS runs the applicant's information through a database to determine if the applicant has a history of fraudulent conduct.  (Second Prebil Decl., ¶ 7.)

### 2.  *Criminal Background Check*

BANA also requires all applicants who have been offered and accepted employment to undergo a Criminal Background Check administered through its vendor, First Advantage Enterprise Screening Corporation ("First Advantage").[2] (Prebil Decl., ¶¶ 10-11; Lunceford Decl., ¶¶ 3, 16.)  The Criminal Background Check process begins when BANA sends an applicant an email with a link directing the applicant to a web-based platform called "ApplyDirect."  (Lunceford Decl., ¶ 6.)  ApplyDirect prompts the applicant to create an account and enter basic personal information.  (*Id*., ¶¶ 7-8.)  After submitting the information, the applicant is directed to two relevant electronic forms.  (*Id*., ¶ 9.)

The first form is called, "Consent Form Standard Package" ("Consent Form").  (*Id*., ¶ 9-11, Ex. 1)  The Consent Form is a five-page document that provides the applicant with an overview of BANA's employment policies.  (*Id*., ¶ 10.)  The applicant must enter his or her name and date and then click "continue." (*Id*., ¶ 11.)  The Consent Form then generates the applicant's electronic signature and date stamp.[3]  (*Id*.)

The second relevant form is called, "Authorization Form for Consumer Reports" (the "Criminal Background Authorization").  (Lunceford Decl., ¶¶ 9, 12, 13, Ex. 3.)  The Criminal Background Authorization is a one-page document that discloses to the applicant that in connection with employment, a consumer report may be procured for a criminal background check.  (*Id*., ¶¶ 13, 14, Ex. 3.)  The

---

[2] Until May 2010, BANA used a company called Choice Point to run the Criminal Background Check phase of its applicant screening process.  (Gallenberg Decl., Ex. 4 at 62:1-8.)

[3] After the applicant clicks "continue" on the Consent Form, the applicant is directed to a new screen that prompts the applicant's consent to using his or her electronic signature on the Criminal Background Authorization by clicking, "I Agree."  (*Id*., ¶ 12, Ex. 2.)

applicant electronically signs his or her name on the bottom of the form. (*Id.,* ¶ 14.) The Criminal Background Authorization contains the applicant's personal identifying information, *i.e.*, date of birth, Social Security number and address. (*Id.*) Once the applicant signs his or her name and clicks "submit," the Criminal Background Authorization shows the applicant's electronic signature and a date/time stamp. (*Id.*, Ex. 3.) Based on information provided by First Advantage, BANA determines whether an applicant meets BANA's employment criteria pursuant to its policies and federal law.[4] (Prebil Decl., ¶¶ 3, 6-8.)

Each Plaintiff completed the ASI Authorization, consenting to the ASI Background Check. (*See* Second Prebil Decl., ¶¶ 13, 15, 18, Exs., 5, 8, 12.) Plaintiffs each received and accepted an offer of employment with BANA, subject to passing a Criminal Background Check. (Prebil Decl., ¶¶ 5, 10-11.) Plaintiffs each completed the Criminal Background Authorization, consenting to the Criminal Background Check. (*See* Lunceford Decl., ¶¶ 21-22, Exs. 5, 6; ¶¶ 23-24, Exs. 8, 9; ¶¶ 25- 26, Exs. 11, 12.) Plaintiffs each satisfied criteria for employment and began working at BANA. (Prebil Decl., ¶¶ 8; 13-14; 16-17.)

**B.     The Present Action**

Plaintiffs filed their First Amended Complaint ("FAC") on July 2, 2014, asserting a single cause of action against Defendant for violation of the FCRA. Plaintiffs allege that Defendant willfully violated Section 1681b(b)(2)(A) of the FCRA by procuring consumer reports using invalid authorization forms, *i.e.,* forms that fail to provide Plaintiffs and class members with a clear and conspicuous disclosure in a document that consists solely of the disclosure. (FAC, ¶¶ 1, 62.)

---

[4] First Advantage searches the applicant's name against five databases: Sanction; Office of Foreign Assets Control; Housing and Urban Development Limited Denial of Participation; Federal Financial Institutions Examination Council. (Lunceford Decl., ¶ 15.) First Advantage also facilitates the applicant's submission of fingerprints to the Federal Bureau of Investigation to determine if the applicant has a criminal conviction that would bar employment with BANA. (*Id.* ¶¶ 15, 16, 18.)

### III.  LEGAL STANDARD

On a motion for summary judgment, the Court must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact.  *Simo v. Union of Needletrades, Indus. & Textile Employees*, 322 F.3d 602, 609-10 (9th Cir. 2003); Fed. R. Civ. P. 56. Summary judgment against a party is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

When the non-moving party bears the burden of proving the claim, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). Thus, when the plaintiff fails to provide evidence of an essential element for a claim that Plaintiff bears the burden of proving at trial, summary judgment for the defendant is appropriate  *See Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 805 (1999) (citing *Celotex,* 477 U.S. at 322).  If the moving party meets its initial burden, the nonmoving party must then set forth, by affidavit or as otherwise provided in Rule 56, facts showing there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The evidence presented by the parties must be admissible.  Fed. R. Civ. P. 56(e).  In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Rather, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor."  *Anderson*, 477 U.S. at 255.  But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence."  *Id*. at 252.  Thus, "[w]here the record taken as a whole

could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted).

## IV. DISCUSSION

### A. The ASI Background Check is Included in Plaintiff's Claim Alleged in the First Amended Complaint

The parties dispute whether Plaintiff's claim only encompasses BANA's Criminal Background Check or whether it also includes the ASI Background Check. Plaintiffs move for partial summary judgment on the grounds that Defendant procures consumer reports as part of its ASI Background Checks and Criminal Background Checks without complying with the FCRA's disclosure requirements.

Defendant argues that the Court should not consider Plaintiffs' arguments relating to BANA's ASI Process because Plaintiffs' FAC alleges no facts or claims relating to BANA's ASI Background Checks or ASI Authorization. (*See* Opp'n, Dkt. No. 64 at 4:26.)

Federal Rule of Civil Procedure 8(a)(2) requires that the allegations in the complaint give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002); *Lee v. City of Los Angeles,* 250 F.3d 668, 679 (9th Cir. 2001).

Plaintiffs' FAC encompass disclosures Defendant uses to procure consumer reports during its employment application process that do not comply with the FCRA. For example, Plaintiffs allege "all class members executed authorization forms permitting Defendant to obtain a consumer report as part of their employment application process that were facially invalid due to their inclusion of a liability waiver within the authorization forms." (FAC, ¶ 50).[5] Plaintiffs also allege, "Defendant included a purported authorization to obtain consumer reports

---

[5] (*See also* FAC at ¶¶ 2, 4, 6, 14, 17-18, 19, 20, 30, and 52.)

1    as part of the employment application which, although defective, evidences

2    Defendant's awareness of and willful failure to follow the governing laws

3    concerning such authorizations."  (FAC, ¶ 68(b).)

4        Plaintiffs' allegations give Defendant fair notice of Plaintiffs' claim

5    (procuring consumer reports without disclosures that meet the FCRA's

6    requirements) and the grounds upon which Plaintiffs' claim rests (using

7    authorization forms during BANA's job application process containing liability

8    waivers and extraneous information).  *See Swierkiewicz,* 534 U.S. at 512; *see also*

9    *Lee,* 250 F.3d at 679.  Defendant also served discovery detailing its ASI

10   Background Checks and disclosures.  (*See* Gallenberg Decl., Ex. 1, Resp. No. 5;

11   Exs. 3, 5.)  Accordingly, the Court finds that the ASI Process is included in

12   Plaintiffs' claim alleged in the First Amended Complaint.

13       While Defendant did not make specific arguments regarding its ASI

14   Background Checks or disclosures in its motion for summary judgment, it argued

15   the legality of its ASI Authorization in opposing Plaintiff's Motion for Partial

16   Summary Judgment.  Plaintiffs and Defendant also provided evidence relating to

17   Defendant's ASI Background Checks and disclosures.  (*See gen*., Def.'s Opp'n,

18   Dkt. No. 64 at 3:5-12:11; Second Prebil Decl.; Gallenberg Decl., Ex. 1.)  The

19   Court further finds that the ASI process is adequately addressed by the parties and

20   is resolved by Defendant's instant Motion.[6]  *See, e.g., Cool Fuel, Inc. v. Connett*,

21   685 F.2d 309, 311 (9th Cir. 1982).

22       Defendant's Motion seeks summary judgment on three grounds:  (1) BANA

23   does not procure "consumer reports" under the FCRA's definition; (2) even if

24   BANA does procure "consumer reports," it does so in compliance with the FCRA;

25

26   [6] At the hearing on the present motions, Plaintiffs' counsel stated that should the Court find the
     ASI Process is part of the present case and rule in favor of Defendant on its Motion for
27   Summary Judgment, Plaintiffs would request additional briefing due to recent discovery
     Defendant produced regarding the ASI Process.  But, as set forth *infra*, the Court finds that the
28   ASI Authorization complies with the FCRA, and thus, Plaintiffs' claim fails as a matter of law.

and (3) BANA's conduct was not "willful," and thus Plaintiffs cannot recover on their claim.

**B.    Whether the Reports are "Consumer Reports" Subject to the FCRA**

The FCRA prohibits the procurement of a "consumer report" for employment purposes unless the employer complies with certain disclosure requirements and the employee authorizes the procurement of the report.  *See* 15 U.S.C. § 1681b(b)(2)(A).  Defendants argue that Plaintiffs' claim fails as a matter of law because BANA does not procure "consumer reports" within the FCRA's definition.

*1.    Definition of "Consumer Report"*

The FCRA defines a "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for [] employment purposes . . . ."  *See* 15 U.S.C. § 1681a(d)(1)(B).

Certain reports that would otherwise be "consumer reports" are excluded from this definition if "the communication is made to an employer in connection with an investigation of:

**(i)** suspected misconduct relating to employment; or

**(ii)** compliance with Federal, State, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer."

(the "Exclusion").  15 U.S.C. § 1681a(y)(1)(B).  For the Exclusion to apply, the communication must not be "made for the purpose of investigating a consumer's credit worthiness, credit standing, or credit capacity," and may only be provided to the employer or its agent.  *See* §§ 1681a(y)(1)(C), (D)(i).  The parties do not

dispute that but for the Exclusion, reports generated in connection with BANA's Background Screening would be "consumer reports" pursuant to the FCRA's definition.

### 2.    *Whether the Reports Fall Within the Exclusion*

The text of the Exclusion is limited by the term "investigation."  *See* 15 U.S.C. § 1681a(y)(1)(B) (excluding from the definition of "consumer reports" a communication "made to an employer in connection with an ***investigation*** of (i) suspected misconduct . . . . or (ii) compliance with . . . laws. . . or any preexisting written policies of the employer") (emphasis added).

The term "investigation" is not defined in the FCRA and is interpreted according to its ordinary meaning.  *See, e.g., Johnson v. United States,* 559 U.S. 133, 134 (2010); *see also Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430-31 (4th Cir. 2004) (finding the plain meaning of the term "investigation" used in a different section of the FCRA "clearly requires some degree of careful inquiry"); BLACK'S LAW DICTIONARY (8th Ed. 2004) (defining "investigation" as "inquir[ing] into (a matter) systematically" or "to make an official inquiry").

Defendant's routine Background Screening is a mandatory condition of employment at BANA as set forth in its written policies.  (Prebil Decl., ¶¶ 4-8, Exs. 1-3)  It does not require a "careful degree of inquiry" into BANA's compliance with laws or its preexisting written policies. *See Johnson*, 357 F.3d at 430-31.  Defendant did not require Plaintiffs to undergo Background Screening in connection with its *investigation*, *i.e.,* a systematic or official inquiry into BANA's compliance with federal laws and written policies; it required Plaintiffs—and all prospective employees—to undergo Background Screening *pursuant* to its written policies and federal law.  The Court finds that Defendant's Background Screening is not an "investigation" within the plain language of the Exclusion.  As such, reports procured by BANA in connection with its Background Screening are

"consumer reports" as defined by the FCRA and thus subject to the FCRA's disclosure requirements.[7]

## C.   Sufficiency of Defendant's Disclosures

The FCRA prohibits the procurement of a consumer report for employment purposes unless:

> **(i)** a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
> **(ii)** the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A).

Defendant provides evidence that it procured Plaintiffs' consumer reports using disclosures that comply with the FCRA, *i.e.*, the Criminal Background Authorization and ASI Authorization (the "Authorizations").

The Criminal Background Authorization is titled in bold, capital font, "**ELECTRONIC AUTHORIZATION FOR CONSUMER REPORTS**."  (*See* Lunceford Decl., Ex. 3.)  It provides in relevant part:

> In connection with your application for employment . . . understand that consumer reports . . . may be requested or made on you including consumer credit, criminal records, driving record, education, prior employer verification, workers compensation claims and others . . . .
>
> By electronically signing below. . . . [y]ou hereby authorize and request, without reservation, any present or former employer, school, police department, financial institution, division of motor vehicles, consumer reporting agencies, or other persons or agencies having knowledge about you to furnish First Advantage with any and all

---

[7] The Court's finding is consistent the purpose of the FCRA, which was intended to protect privacy, avoid misuse of an employee's personal information, and protect an individual from having inaccurate information used as a factor in determining eligibility for employment.  *See* 84 Stat. 1128, 15 U.S.C.A. § 1681(b); H.R.Rep. No. 103-486, at 30 (1994).  Exempting Defendant's Background Screening would be inconsistent with the purpose of the FCRA.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

background information in their possession regarding you, in order that your employment qualifications may be evaluated.

(*Id.*)  The Criminal Background Authorization contains the applicant's name, address, date of birth, Social Security Number and electronic signature.  (*See id.*)

The ASI Authorization is titled in bold font, "**Request to Initial Authorization for Investigation**."  (Second Prebil Decl., Ex. 4.)  The ASI Authorization provides in relevant part:

In connection with my employment or application for employment with [BANA] I authorize the Bank to request and obtain a consumer report that may contain information about my prior employment. . . prepared by [EWS] a consumer reporting agency.  I understand that [EWS] may utilize and report information from my former employers.  I request, authorize and consent to the release and disclosure of any and all such information to the Bank by [EWS].

Both Authorizations are "clear and conspicuous," they disclose that a consumer report may be obtained for employment purposes, and they are in a document that consists solely of the disclosure.  *See* 15 U.S.C. § 1681b(b)(2)(A).  Plaintiffs each authorized the procurement of their consumer reports.  (*See* Lunceford Decl., ¶¶ 21-26, Exs. 5-12; *see also* Second Prebil Decl., ¶¶ 13, 15, 18, Exs. 5, 8, 12.)  The Court finds that Defendant's Authorizations meet the FCRA's disclosure requirements.  Defendant has therefore met its burden showing summary judgment is appropriate.

To defeat summary judgment, Plaintiffs must set forth evidence showing there is a genuine issue for trial.  *Anderson*, 477 U.S. at 250.  Plaintiffs contend that (1) Defendant procures consumer reports pursuant to the facially invalid Consent Form, and (2) The Criminal Background Authorization does not meet the FCRA's disclosure requirements because it is "sandwiched" between extraneous information amounting to over fifteen pages within BANA's online employment application process.  (Opp'n at 15:19-22:6.)

### 1.      *Procurement of Consumer Reports*

Plaintiffs contend that First Advantage procures consumer reports automatically once an applicant electronically signs the Consent Form, regardless of whether the applicant also signs the Criminal Background Authorization. (Opp'n at 16:6-10.)  Plaintiffs rely on the following deposition testimony from First Advantage:

> *Q. Okay.  So essentially after the consent form web page is submitted First Advantage can go ahead and then procure the consumer report for that applicant, correct?  A:  As long as the applicant acknowledges and hits submit yes.*
>
> *Q.  Because it's an automatic system, correct, used by First Advantage where it automatically requests the consumer report once that consent form page is clicked would submit, correct? A:  Correct.*

(Opp'n at 16:6-15) (citing Gallenberg Decl., Deposition of Third Party First Advantage, Dkt. No. 57-2 Ex. 7 at 89:1-20.)  Plaintiffs contend that the Consent Form—a five-page document containing extraneous information, including waivers of rights—is the operative FCRA disclosure, which violates the FCRA's requirement that the disclosure be in a document consisting solely of the disclosure.  (Opp'n at 16:22-17:10.)

Examining the testimony it is not clear that the witness is testifying regarding the Criminal Background Authorization.  The witness previously testified that she was using the terms "authorization" or "consent form" interchangeably, with no objection from counsel.  (*Id*. at 81:21-25.)  Yet construing the evidence in Plaintiffs' favor and assuming the witness is testifying that consumer reports are procured pursuant to the five-page Consent Form, the testimony does not create a genuine issue of fact.

The FCRA requires that a clear and conspicuous disclosure be made any time before the report is procured or caused to be procured.  *See* 15 U.S.C. § 1681b(b)(2)(A).  Plaintiffs do not provide evidence that the disclosure, *i.e.,* the

1    Criminal Background Authorization, was made *after* Plaintiffs' consumer reports

2    were already procured or caused to be procured.[8]  The Court finds that Plaintiffs'

3    evidence does not create a genuine issue of material fact as to when Plaintiffs'

4    consumer reports were procured.  *See Anderson*, 477 U.S. at 252.

5          **2.     *Presentation of FCRA Disclosures***

6         Plaintiffs contend that even if the consumer reports were procured pursuant

7    to the Criminal Background Authorization, the disclosure violates the FCRA

8    because it is presented in a job application and side-by-side with extraneous

9    information (BANA's unlawful Consent Form on one side, and BANA's

10    fingerprint-scheduling tool on the other).  (Opp'n at 18:6-10.)

11         Plaintiffs argue that the FCRA disclosures must be presented in a way that

12    would not distract consumers by surrounding the disclosure with additional

13    information.[9]  (*Id*. at 18:25-28.)  Plaintiffs contend that the FCRA disclosure is not

14    a clear and conspicuous document consisting solely of the disclosure because

15    BANA seeks applicants' authorization during its job application process through a

16    "convoluted electronic book" exceeding fifteen pages.[10]  (Opp'n at 19-22:6.)

17

---

18    [8] Conversely, evidence before the Court shows that Plaintiffs' signed the disclosure (the Criminal Background Authorization) *before* First Advantage procured their consumer reports.

19    Plaintiff Newton's consumer report shows an "order date" of May 20, 2011 (the day after Newton signed the Authorization); Plaintiff Lamb's consumer report shows an "order date" of

20    May 4, 2012 (the day after Lamb signed the Authorization); and Plaintiff Johnson's consumer report shows an "order date" of May 7, 2012 (two days after Johnson signed the Authorization).

21    (*See* Lunceford Decl., ¶¶ 21-26, Exs. 5-6, 8-9, 11-12; *see also* Gallenberg Decl., Dkt. No. 57-2,

22    Ex. 2.)

23    [9] *See, e.g.,* Letter from Cynthia Lamb, Investigator, Div. of Credit Practices, Fed. Trade Comm'n, to Richard Steer, Jones Hirsch Conners & Bull, P.C. 1997 WL 33791227, at *1 (Oct.

24    21, 1997) ("Steer Letter"); *see also* Letter from Clark W. Brinckerhoff, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to H. Rowan Leathers, Manier & Herod, 1998 WL 34323725, at

25    *1 (Sep. 9, 1998) ("Leathers Letter").

26    [10] Plaintiffs cite a number of district court opinions that have found that inclusion of a liability

27    waiver provision in the FCRA disclosure violates the FCRA's requirement that the document "consist solely of the disclosure."  *See, e.g., Singleton v. Domino's Pizza*, No. 11-1823, 2012

28    WL 245965 (D. Md. Jan. 25, 2012); *Reardon v. ClosetMaid Corp.,* No. 2:08-1730, 2013 WL

1   The FCRA does not define the term "clear and conspicuous" and there is no

2   binding authority interpreting the term as used in § 1681b.  Other courts have

3   interpreted a "clear and conspicuous" disclosure to mean "in a reasonably

4   understandable form and readily noticeable to the consumer."  *See Rossman v*

5   *Fleet Bank (R.I.) Nat. Ass'n*, 280 F.3d 384, 390 (3d Cir. 2002) (interpreting

6   disclosure in Truth in Lending Act context); *see also Gillespie v. Equifax Info.*

7   *Servs. LLC*, 484 F.3d 938, 941-42 (7th Cir. 2007) (explaining in the FCRA

8   context, something is not "clearly" disclosed if it is presented in a way as to cause

9   "confusion and uncertainty for the consumer").

10   The Authorizations are conspicuous to the applicant and use language that a

11   lay person would understand.  The amount of text is minimal with headings in

12   boldface, capital font using a larger typeface than the surrounding text.  (*See*

13   Lunceford Decl., Ex. 3; Second Prebil Decl., ¶ 10, Ex. 4.)  The FCRA does not

14   prohibit an employer from providing an FCRA disclosure as part of the

15   employer's job application process.  Nor does the FCRA prohibit an employer

16   from providing an FCRA disclosure at the same time the employer provides other

17   employment documents.  In absence of Ninth Circuit authority, the Court declines

18   to impose requirements on employers that are not enumerated in the FCRA.

19   Because the ASI Authorization and Criminal Background Authorization comply

20   with the FCRA's disclosure requirements, Plaintiffs' claim fails as a matter of

21   law.[11]  *See* § 1681b(b)(2)(A)(i); Fed. R. Civ. P. 56.

22   Even if the Court were to find that Defendant's disclosures did not comply

23   _____

24   6231606 (W.D. Pa Dec. 2, 2013); *Dunford v. Am. DataBank, LLC*, No. 13-038929, 2014 U.S.
Dist. LEXIS 111761, at *32 (N.D. Cal. Aug. 12, 2014)  These cases are inapposite because

25   Defendant's Authorizations do not include a liability waiver.

26   [11] Following the hearing on the present motions, Plaintiffs filed Notices of Supplemental
Authority attaching and arguing decisions rendered by other courts (the "Notices").  (Dkt. Nos.

27   85, 87, 89, 91.)  This is supplemental briefing without the Court's permission, violating ¶ 7 of
the Court's Standing Order.  (*See* Dkt. No.9.)  The Court therefore **STRIKES** Plaintiffs'

28   Notices.  *See* C.D. Cal. R. 7-10; *Leong v. Potter*, 347 F.3d 1117, 1125 (9th Cir. 2003).

14

1   with a strict reading of the FCRA, Plaintiffs cannot recover the damages they seek

2   because any resulting violation by Defendant was not "willful."

3   **D.     Willful Noncompliance**

4          Plaintiffs seek only statutory and punitive damages, requiring them to

5   establish that Defendant willfully violated the requirements of the FCRA.  *See* 15

6   U.S.C. § 1681n(a).  A defendant's violation is willful if the defendant knew its

7   conduct violated the law or was reckless in disregarding the risk it created.  *See*

8   *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007); *see also Syde v. M-I LLC*,

9   No. 1:14-742, 2014 WL 5426862, at *2 n.1 (E.D. Cal. Oct. 23, 2014) (Shubb, J.)

10   ("[W]hether a defendant's reading of the FCRA was 'objectively unreasonable' is

11   a question of law properly decided by the court on summary judgment").

12          There is no binding authority requiring that Defendant present FCRA

13   disclosures outside of its employment application process.  Even if Defendant's

14   presentation of its disclosures did not meet the FCRA's requirements, it is not

15   plausible that BANA willfully violated the FCRA because its interpretation had "a

16   foundation in the statutory text" derived without "the benefit of guidance from the

17   courts of appeals."  *Safeco*, 551 U.S. at 70; *see also Syed*, 2014 WL 4344746, at

18   *4 (granting the defendant's motion to dismiss, finding no support for the

19   plaintiff's allegation of willfulness given the "dearth of authority" and the "less-

20   than-pellucid" statutory text); *see also Peikoff v. Paramount Pictures Corp.*, No.

21   15-cv-00068, Dkt. No. 15 (N. D. Cal. Mar. 25, 2015).  For this additional reason,

22   Plaintiffs' claim fails.

23   //

24   //

25   //

26   //

27   //

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.     CONCLUSION

The Court **GRANTS** Defendant's Motion for Summary Judgment.  The Court **DENIES** Plaintiffs' Motion for Class Certification and Motion for Partial Summary Judgment as moot.

**IT IS SO ORDERED.**

DATE:  May 12, 2015

_____

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE